UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABO LABRADOR-PRATO,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.<br><br>Respondents. | No. 1:25-cv-01598-DC-SCR (HC)<br><br>ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner Isabo Labrador-Prato's motion for a temporary restraining order (Doc. No. 2) filed in conjunction with her petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging her ongoing immigration detention. (Doc. No. 1.) Having considered the parties' briefing (Doc. Nos. 2, 11,12), the court will grant Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.     Factual Background**

Petitioner is a citizen of Venezuela who entered the United States by crossing the Rio Grande on September 9, 2021. (Doc. Nos. 1 at ¶¶ 8–9; 1-1 at 2, 15.) United States Border Patrol arrested Petitioner several hours after she entered the United States. (Doc. No. 1 at ¶ 8.) Petitioner was placed into removal proceedings under section 240 of the Immigration and Nationality Act

1

1  ("INA") and transferred into the custody of United States Immigration and Customs Enforcement
2  ("ICE"). (Doc. Nos. 1 at ¶¶ 8–10, 42; 1-1 at 15, 17.)

3   On September 28, 2021, ICE issued a notice of custody determination, releasing Petitioner
4  from custody pursuant to the authority contained in section 236 of the INA (8 U.S.C. § 1226(a))
5  and part 236 of Title 8 of the Code of Federal Regulations. (Doc. No. 1-1 at 6.) The notice
6  indicated Petitioner would be released "under other conditions" and additional documents would
7  be provided to her. (*Id*.) On December 28, 2021, ICE issued an order of release on recognizance
8  ("OREC") for Petitioner.[1] (*Id*. at 5.) The OREC states Petitioner had been arrested and placed in
9  removal proceedings. (*Id*.) The OREC further states Petitioner was being released on her own
10 recognizance provided she complied with certain conditions "[i]n accordance with section 236 of
11 the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations." (*Id*.) The
12 OREC imposed several conditions, including in-person reporting and a requirement that
13 Petitioner must not violate any local, state, or federal laws or ordinances. (*Id*.)

14  Petitioner alleges she has no criminal history, no disciplinary infractions during her
15 detention, and has consistently cooperated with immigration authorities. (Doc. No. 1 at ¶¶ 8, 13.)
16 Petitioner also alleges she is actively pursuing asylum, withholding of removal, and protection
17 under the Convention Against Torture. (*Id*. at ¶¶ 6, 13.) On September 9, 2022, ICE received
18 Petitioner's application for asylum and withholding of removal, which remains pending. (Doc.
19 No. 1-1 at 11.)

20  On July 18, 2025, ICE arrested Petitioner and transferred her from San Fransico, where
21 she resides, to California City Correctional Center in California City, California, where she is
22 currently detained. (Doc. Nos. 1 at ¶¶ 2, 10; 1-1 at 11.) Petitioner requested bond and appeared
23 before the Adelanto Immigration Court for a bond redetermination hearing sometime between
24 August 18, 2025 and September 5, 2025.[2] (Doc. Nos. 1 at ¶¶ 11, 45; 1-1 at 8.) Following the

---

25 [1] The OREC is not signed by Petitioner, which is not addressed in the parties' briefings. (*See*
26 Doc. Nos. 2; 11.)

27 [2] It is not clear when the hearing with an immigration judge was held. In the petition and
   opposition to the motion for temporary restraining order, the parties agree that Petitioner came
28 before the Adelanto Immigration Court on her request for a bond redetermination hearing on

1  hearing, an immigration judge denied Petitioner's request for a bond hearing "on purely

2  jurisdictional grounds." (Doc. Nos. 1 at ¶¶ 5, 12, 14; 1-1 at 8.) Specifically, the immigration

3  judge relied on the decision in *Matter of Q. Li,* 29 I. & N. Dec. 66 (BIA 2025), and held Petitioner

4  was subject to mandatory detention under 8 U.S.C. § 1225(b) and was ineligible for bond under

5  § 1226(a). (Doc. Nos. 1 at ¶¶ 5, 12; 1-1 at 8.)

**B.     Procedural Background**

On November 11, 2025, Petitioner filed a petition for writ of habeas corpus and the pending motion. (Doc. Nos. 1, 2.) Petitioner raises the following claims against Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Sergio Albarran, and Christopher Chestnut ("Respondents"): (1) unlawful detention in violation of the INA and its implementing regulations; (2) violation of her due process rights under the Fifth Amendment; (3) violation of the Administrative Procedures Act; (4) violation of the equal protection guarantee of the Fifth Amendment; (5) violation of the Suspension Clause; and (6) violation of the *Accardi* doctrine with respect to 8 C.F.R. § 287.8(C)(2)(i) and (ii). (Doc. No. 1 at 7–8, 12–22.)

In her pending motion, Petitioner asks the court to order her immediate release from custody.[3] (Doc. Nos. 2 at 6, 16; 2-2 at 2.) Petitioner also asks the court to enjoin Respondents from transferring her outside the Eastern District while this action is pending.[4] (Doc. No. 2 at 6, 17; 2-2.) The following day, the court issued a briefing schedule on Petitioner's motion. (Doc.

---

September 5, 2025. (Doc. Nos. 1 at ¶ 11; 11 at 1.) However, the immigration judge's order, attached to Petitioner's petition, is dated August 15, 2025. (Doc. No. 1-1 at 8.) In her reply, Petitioner notes the hearing took place on August 18, 2025. (Doc. No. 12 at 5.)

[3] In the alternative to immediate release, Petitioner asks the court to order Respondents to provide her with a constitutionally adequate bond hearing before a neutral immigration judge within three days. (Doc. No. 2 at 6, 16.) Because Petitioner's immediate release is warranted, the court will not address Petitioner's alternative request.

[4] Petitioner provides no authority to support her request to enjoin Respondents from transferring her outside the Eastern District while this action is pending. Because "[t]he court need not make an order preserving its jurisdiction" and Petitioner is being provided immediate release, the court will not address Petitioner's request to enjoin Respondents from transferring her. *Cajina v. Wofford*, No. 25-cv-01566-DAD-AC, 2025 WL 3251083, at *2, n. 1 (E.D. Cal. Nov. 21, 2025) (citing *Y.G.H. v. Trump*, 787 F. Supp. 3d 1097, 1105 (E.D. Cal. 2025)).

3

No. 6.) On November 24, 2025, Respondents filed a timely opposition to the motion. (Doc. No. 11.) On November 27, 2025, Petitioner filed a reply thereto. (Doc. No. 12.)

## LEGAL STANDARDS

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## DISCUSSION

**A.   Likelihood of Success on the Merits**

   1.   Statutory Framework

Petitioner argues she is likely to succeed on the merits of her claims because she has not received a bond hearing before a neutral adjudicator and remains detained, which exceeds the government's statutory authority under section 1226(a). (Doc. No. 2 at 10.) Respondents argue Petitioner is not entitled to a bond hearing because she is subject to mandatory detention under section 1225. (Doc. No. 11.)

The complex statutory framework governing the detention and removal of inadmissible noncitizens in this country is at issue here. Sections 1225 and 1226 govern the detention of inadmissible noncitizens who have been placed in removal proceedings. 8 U.S.C. §§ 1225, 1226.

4

1    Section 1226(a) is the "usual removal process" for inadmissible noncitizens. *Dep't of Homeland
2    Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The noncitizen's removal commences with the
3    filing of a Notice to Appear with the Immigration Court, initiated under 8 U.S.C. § 1229(a). *Ortiz
4    Donis v. Chestnut*, No. 25-cv-01228-JLT-SAB, 2025 WL 2879514, at *3 (E.D. Cal. Oct. 9,
5    2025). The removal process provides for an evidentiary hearing before an immigration judge to
6    allow the noncitizen to show she should not be removed. *Thuraissigiam*, 591 U.S. at 108. The
7    noncitizen is permitted to apply for asylum if she would be persecuted if returned to her home
8    country. *Id*. (citing 8 U.S. § 1229a(b)(4); 8 C.F.R. § 1240.11(c)(2020).) If asylum is not granted,
9    and the noncitizen is ordered removed, she can appeal the order to the Board of Immigration
10   Appeals. *Id*. (citing 8 U.S. §§ 1229a(c)(5), 1252(a)).

   Section 1226 provides a discretionary detention scheme while removal proceedings are
12   pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the
13   government may continue to detain the individual or may release her on bond or conditional
14   parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE
15   officer makes an initial custody determination, and the noncitizen will be released upon a
16   showing "to the satisfaction of the officer that such release would not pose a danger to property or
17   persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*,
18   53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained
19   under section 1226(a), she is entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306
20   (2018).

   As to noncitizens seeking admission into the United States, section 1225 provides for
22   mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. §
23   1225; see also *Ortiz Donis*, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already
24   present in the United States,' U.S. immigration law also 'authorizes the Government to detain
25   certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that
26   provides for expedited removal.") (citing *Jennings*, 583 U.S. at 303.) Section 1225(b)(2)(A)
27   provides:
28   /////

5

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[5]

An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Until this year, the United States Department of Homeland Security ("DHS") has "applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). According to Petitioner, on July 8, 2025, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that section 1225 "is the applicable immigration detention authority for all applicants for admission." (Doc. No. 1 at ¶ 37.) Following this development, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); *Salcedo Aceros*, 2025 WL 2637503, at *4.

In their opposition, Respondents reiterate the government's position that section 1225 applies broadly to all noncitizens, including Petitioner, who are "present in the United States who ha[ve] not been admitted." (Doc. No. 11 at 3) (quoting *Ramos v. Lyons*, No. 25-cv-09785-SVW-AJR, 2025 WL 3199872, at *4 (C.D. Cal. Nov. 12, 2025)). However, the legal arguments Respondents rely upon to support the government's position that section 1225 applies here have been consistently rejected by a majority of courts in this district and courts across the country. *See Valencia Zapata v. Kaiser,* No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sep. 26, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases). Instead, those

---

[5] Subparagraph (B) of 8 U.S.C. § 1225(b)(2) sets forth exceptions to subparagraph (A). Subparagraph (C) of the same section addresses the [treatment] of [noncitizens] arriving from contiguous territory." 8 U.S.C. § 1225 b)(2)(C). Neither subparagraph appears to apply here.

1 courts have generally held that section 1226 rather than section 1225 is the appropriate section to
2 apply in cases in which a noncitizen is already living in the United States. *See C.A.R.V. v.*
3 *Wofford*, No. 25-cv-01395-JLT-SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 1, 2025) (finding
4 section 1226 applied when "petitioner ha[d] been present in the United States for approximately
5 four years and was released on his own recognizance well before Respondents adopted the new
6 interpretation of the governing statutes"); *see Bernardo Aquino v. Larose*, No. 25-cv-02904-RSH-
7 MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of
8 courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention
9 provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who has resided in the United
10 States for many years.") (citing cases).

11 The majority view rejects the government's new interpretation of section 1225 as the
12 applicable immigration detention authority for all inadmissible noncitizens. (Doc. No. 11 at 3.).
13 Indeed, Petitioner was specifically released in accordance with section 236 of the INA [section
14 1226]. (Doc. No. 1-1 at 5–6.) "Having elected to proceed with full removal proceedings under
15 § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal
16 proceedings." *Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug.
17 21, 2025). Accordingly, Petitioner is likely subject to the discretionary detention scheme set forth
18 in section 1226.

19     2. <u>Due Process</u>

20 Petitioner also argues her continued detention violates her due process rights under the
21 Fifth Amendment. (Doc. No. 2 at 11–12.) Respondents do not address Petitioner's due process
22 claim in their opposition.

23 The Due Process Clause protects persons in the United States from being deprived of life,
24 liberty, or property without due process of law. U.S. Const. amend. V. It is firmly established that
25 these protections extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533
26 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United
27 States, including aliens, whether their presence here is lawful, unlawful, temporary, or
28 permanent."); *Wong Wing v. U.S.*, 163 U.S. 228, 238 (1896) ("It must be concluded that all

7

persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id*. The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id*.

The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693. Since Petitioner has a protected liberty interest, the court must determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Diaz*, 53 F. 4th at 1206–07 (applying the *Mathews* test to a procedural due process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Here, it is undisputed that Petitioner was released on her own recognizance for nearly four years and Petitioner alleges she has consistently cooperated with immigration authorities during that time. (Doc. No. 1 at ¶ 13); *see Valencia Zapata*, 2025 WL 2741654, at *8 (noting that release under section 1226 "implied a promise" that petitioners would not be re-

detained so long as they adhere to the terms of their release). Thus, this factor favors a finding that Petitioner's private interest has been affected by her detention.

The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a danger to the community or risk of flight. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

Petitioner has been detained for over four months without being provided a bond hearing before an immigration judge to evaluate her dangerousness and/or flight risk. Petitioner alleges, and Respondents do not contest, that she has no criminal history, no record of violence, and has never exhibited conduct suggesting she is a danger to the community or a flight risk. (Doc. No. 1 at ¶ 43.) Respondents have not argued or presented any evidence that Petitioner presents a danger to the community or a flight risk. Therefore, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Turning to the third *Mathews* factor, the court acknowledges the government has an interest in the steady enforcement of its immigration laws but recognizes that the government's interest in detaining Petitioner without any procedural protections is substantially "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Custody hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without [any procedural protections] is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors favoring Petitioner show a likelihood of success on the merits that due process requires a bond hearing prior to her re-detention. Therefore, the court finds that Petitioner has established a likelihood of success on the merits of her due process claim.

/////

**B.     Irreparable Harm**

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi,* 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that she is likely unlawfully detained in violation of her due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." *Valencia Zapata*, 2025 WL 2741654, at

10

*13 (quoting *Salcedo Aceros*, 2025 WL 2637503, at *14). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.    Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919).

The parties do not address in their briefing whether security is warranted in this case. The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

**CONCLUSION**

For the reasons explained above,

1. Petitioner Isabo Labrador-Prato's motion for temporary restraining order (Doc. No. 2) is GRANTED;

2. Petitioner Isabo Labrador-Prato shall be released immediately from the Respondents' custody. Respondents shall not impose any additional restriction on

11

her, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered; and

4. Respondents are ORDERED TO SHOW CAUSE no later than **December 5, 2025**, as to why this Court should not issue a preliminary injunction on the same terms as this Order. Petitioner may file an opposition by no later than **December 9, 2025**. Respondents may file a reply to Petitioner's opposition by no later than **December 12, 2025**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated:   **December 1, 2025**

Dena Coggins
United States District Judge